UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEAN SCOTT,

                                        NO. CIV. S-08-873 LKK/GGH

        Plaintiff,

    v.

                                        O R D E R

CITY OF YUBA CITY,
DEPARTMENT OF PUBLIC WORKS,
and DOES 1 through 50,
inclusive,

        Defendants.

_____/

    Plaintiff Dean Scott has brought a complaint against his former employer, defendant Yuba City, alleging disability discrimination under the Rehabilitation Act and the Americans with Disabilities Act, violation of Title VII, failure to engage in an interactive process in determining reasonable accommodations, wrongful termination in violation of public policy, intentional misrepresentation, and violation of California Labor Code section 201.  Pending before the court is defendant's motion to dismiss. The court resolves the matter upon the parties' papers and after

1

1  oral argument.  For the reasons explained below, the motion is
2  granted in part and denied in part.

3  **I. Factual Background[1]**

4      Plaintiff, who has Type I diabetes, began working for
5  defendant Yuba City on April 3, 2006 as a Public Works
6  Maintenance Worker I.  Compl. ¶¶ 8, 10.  Plaintiff's job duties
7  included the operation of specialized vehicles and power
8  equipment, the use of hand tools, and assistance with
9  maintenance and repair of fire hydrants.  Id.  In order to
10 operate heavy mechanical equipment, plaintiff was required to
11 obtain a commercial driver's license from the State of
12 California Department of Motor Vehicles ("DMV") within six
13 months of his initial hire date.[2]  Compl. ¶ 13.

14     On October 2, 2006, the DMV informed plaintiff that because
15 he was insulin-dependent, his employer had to submit additional
16 paperwork.  Compl. ¶ 15.  Plaintiff's immediate supervisor
17 refused to complete the paperwork out of a fear of liability and
18 instead forwarded it to the department director.  Compl. ¶ 17.
19 The department director completed the paperwork for plaintiff
20 but only after first speaking with the department's insurance
21 provider.  Compl. ¶ 19.  In addition, plaintiff alleges that the
22 department director checked inappropriate boxes and fabricated
23 job requirements to make plaintiff's work duties appear more

24

25        [1] All allegations are derived from plaintiff's complaint.

26        [2] Plaintiff alleges that he sought and obtained from defendant
   an extension of time for this six month period.  Compl. ¶ 14.

1   strenuous.  Compl. ¶ 21.

2       On October 9, 2006, plaintiff met with his immediate

3   supervisor and received his Quarterly Couching Evaluation Form.

4   Compl. ¶ 25.  The evaluation scored Plaintiff at 2.57 out of 5,

5   which fell in the "Satisfactory" range.  Id.  The evaluation

6   also contained a number of negative comments about plaintiff's

7   work history and performance.  Id.  Plaintiff's previous

8   quarterly evaluation was positive.  Compl. ¶ 12.  Plaintiff

9   complained to both his immediate supervisor and department

10  director that he believed he was being discriminated against

11  because of his diabetes.  Compl. ¶ 30.  The department director

12  denied having knowledge of plaintiff's diabetes "until

13  recently."  Id.

14      On October 12, 2006, plaintiff went to Yuba City Hall and

15  spoke with the city's human resources manager.  Compl. ¶ 31.

16  The manager said that he would meet with plaintiff's supervisors

17  in order to discuss plaintiff's complaint.  Id.  Plaintiff

18  alleges that he never heard back from human resources.  Id.

19      In November 2006, plaintiff received two written

20  complaints, both of which he contested.  Compl. ¶¶ 36-38.  On

21  November 27, 2006, one day before plaintiff's DMV hearing

22  regarding his commercial driver's license, plaintiff was

23  terminated.  Compl. ¶ 41.  Plaintiff did not receive his final

24  paycheck until almost three weeks later, on Friday, December 8,

25  ////

26  ////

1  2006.[3]  Compl. ¶ 42.

2                        **II. Standard**

3       In order to survive a motion to dismiss for failure to state

4  a claim, plaintiff must allege "enough facts to state a claim to

5  relief that is plausible on its face." <u>Bell Atlantic Corp. v.</u>

6  <u>Twombly</u>, -- U.S. --, 127 S. Ct. 1955, 1974 (2007).  While a

7  complaint need not plead "detailed factual allegations," the

8  factual allegations it does include "must be enough to raise a

9  right to relief above the speculative level." <u>Id.</u> at 1964-65.

10      The Supreme Court recently held that Federal Rule of Civil

11  Procedure 8(a)(2) requires a "showing" that the plaintiff is

12  entitled to relief, "rather than a blanket assertion" of

13  entitlement to relief.  <u>Id.</u> at 1965 n.3.  Though such assertions

14  may provide a defendant with the requisite "fair notice" of the

15  nature of a plaintiff's claim, the Court opined that only

16  factual allegations can clarify the "grounds" on which that

17  claim rests.  <u>Id.</u>  "The pleading must contain something more. .

18  . than . . . a statement of facts that merely creates a

19  suspicion [of] a legally cognizable right of action." <u>Id.</u> at

20  1965, quoting 5 C. Wright & A. Miller, Federal Practice and

21

22      [3] Following the termination, plaintiff also applied for
unemployment benefits.  Compl. ¶ 44.  Defendant contested the
23  application on the grounds that it terminated plaintiff for
misconduct.  <u>Id.</u> Specifically, defendant claimed that plaintiff's
24  DMV record revealed that he had a history of "Using Motor Vehicle
in Connection with Illegal Activity Other than a Felony," which had
25  disqualified him from driving commercially.  <u>Id.</u> Plaintiff alleges
that he has never been involved in any illegal activity.  Compl.
26  ¶ 45.

                                4

1  Procedure, § 1216, pp. 235-36 (3d ed. 2004).[4]

2      On a motion to dismiss, the allegations of the complaint

3  must be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322

4  (1972).  The court is bound to give the plaintiff the benefit of

5  every reasonable inference to be drawn from the "well-pleaded"

6  allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

7  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the

8  complaint is construed favorably to the pleader.  See Scheuer v.

9  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

10 Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the

11 court does not accept as true unreasonable inferences or

12 conclusory legal allegations cast in the form of factual

13 allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th

14 Cir. 1981).

15                        **III. Analysis**

16 **A. Receipt of Federal Funds Under the Rehabilitation Act**

17      The Rehabilitation Act prohibits discrimination on the

18 basis of disability "under any program or activity receiving

19 Federal financial assistance or under any program or activity

20 conducted by any Executive agency."  29 U.S.C. § 794(a).

21 Receipt of financial assistance is an element of a cause of

22 action under the Rehabilitation Act.  See Darcy v. Lippman, No.

23 ─────────────────

24      [4] The holding in Twombly explicitly abrogates the well
established holding in Conley v. Gibson that, "a complaint should
not be dismissed for failure to state a claim unless it appears
25 beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  355 U.S.
26 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

                              5

1   03-6898, 2008 WL 629999, at *6 (S.D.N.Y. Mar. 10, 2008) (holding

2   that to state a claim under the Rehabilitation Act, plaintiff

3   must allege facts showing that "that the employer receives

4   federal financial assistance"); Spencer v. Dawson, No. 04-5048,

5   2005 WL 643331, at *5 (N.D. Ill. Mar. 3, 2005) (holding that to

6   state a claim plaintiff must allege that the "program or

7   activity in question receives federal financial assistance")

8   (citing Grzan v. Charter Hosp. Of Nw. Indiana, 104 F.3d 116, 119

9   (7th Cir. 1997)). While plaintiffs "will seldom be able to

10  specifically allege the intricacies of the defendants' use of

11  federal assistance," these types of detailed allegations are

12  unnecessary as long "some federal funding is alleged."  Spencer,

13  2005 WL 643331, at *5.

14      Here, plaintiff fails to allege that defendant receives

15  federal assistance.  Accordingly, the Rehabilitation Act claim

16  is dismissed with leave to amend.

17  **B. "Disability" Under the ADA and the Rehabilitation Act**

18      Under the ADA,[5] a person is disabled if he or she has : 1)

19  a physical or mental impairment that substantially limits a

20  major life activity; 2) a record of such an impairment; or 3) is

21  regarded as having such an impairment.  42 U.S.C. § 12102(2).

22      Major life activities are those "that are of central

23  importance to daily life," Toyota Motor Mfg., Ky., Inc. v.

24  Williams, 534 U.S. 184, 197 (2000), such as "'caring for one's

25  ─────────────────

26      [5]  The standards for ascertaining discrimination under the ADA
    and the Rehabilitation Act are the same.  29 C.F.R. § 1614.203(b).

6

1  self, performing manual tasks, walking, seeing, hearing,

2  speaking, breathing, learning, and working,'" Mahon v. Crowell,

3  295 F.3d 585, 590 (6th Cir. 2002) (quoting 45 C.F.R

4  84.3(j)(2)(ii)).  The impairment must cause a substantial

5  limitation of the individual's ability to perform the activity;

6  moderate interruptions in the performance of the activity are

7  insufficient.  See Mahon, 295 F.3d at 590-91.  Furthermore, "[a]

8  person whose physical or mental impairment is corrected by

9  medication or other measure does not have an impairment that

10  presently 'substantially limits' a major life activity."  Sutton

11  v. United Air Lines, Inc., 527 U.S. 471, 2147-48 (1999).

12  "Before determining whether a person's impairment is

13  substantially limiting, the court considers the nature,

14  severity, duration, and impact of the impairment" on a

15  particular individual.  Fraser v. Goodale, 342 F.3d 1032, 1038

16  (9th Cir. 2003) (citing 29 C.F.R § 1630.2(j)(2)(i)-(iii)).

17  Whether a person has an disability under the ADA is an

18  individualized inquiry.  Id.

19       Here, plaintiff alleges that he was diagnosed with Type I

20  diabetes in 1988.  Compl. ¶ 8.  In Fraser, the Ninth Circuit had

21  "little difficulty in concluding that diabetes is a 'physical

22  impairment' under the ADA" because it is a "physical condition

23  affecting the digestive, hemic, and endocrine systems."  342

24  F.3d at 1038.  Having alleged an impairment, the plaintiff is

25  not required at the pleading stage to assert a substantially

26  limited major life activity if the court can infer the major

7

1   life activity that is affected.   <u>See</u> <u>Rohm v. Homer</u>, 367 F. Supp.

2   2d 1278, 1283. (N.D. Cal. 2005) (holding that a plaintiff who

3   pleads an impairment with clarity need not explicitly identify a

4   substantially limited major life activity); <u>EEOC v. J.H. Routh</u>

5   <u>Packing Co.</u>, 246 F.3d 850, 852-55 (6th Cir. 2001) ("[a]

6   plaintiff would be wise to mention her specific limited major

7   life activity, but failing to do so is not fatal to her

8   complaint").   The purpose of Rule 8 is to give defendant fair

9   notice, and "when a plaintiff claims to be impaired, it is not

10  too difficult to infer which life activities the impairment

11  affects."   <u>Rohm</u>, 367 F. Supp. 2d at 1283.

12        In <u>Fraser</u>, for example, the Ninth Circuit found that

13  plaintiff had presented triable issues of fact as to whether her

14  diabetes limited the major life activity of eating.   342 F.3d at

15  1040-43.   While not all physical impairments may self-evidently

16  reveal which major life activities are affected (if any), <u>see,</u>

17  <u>e.g.</u>, <u>Ward v. Kaiser Hosp.</u>, No. C-06-2645, 2006 WL 2529479, at

18  *3 (N.D. Cal. Apr. 31, 2006) (allegation of alcoholism

19  insufficient to put defendant on notice of affected life

20  activities, where plaintiff alleged that alcoholism did not

21  affect his ability to work), affording plaintiff all reasonable

22  inferences, the court infers that plaintiff has alleged at least

23  a substantial limitation on eating.

24        In <u>Sutton</u>, the court acknowledged that individuals can take

25  medication to "lessen the symptoms of an impairment so that they

26  can function but nevertheless remain substantially limited."

1  527 U.S. at 489 (finding that myopic plaintiffs were not

2  disabled because they could use eyeglasses or contact lenses to

3  achieve 20/20 vision).  Even though the plaintiff alleges that

4  he has always "managed his [d]iabetes adequately and properly,"

5  Compl. ¶ 3, a diabetes regimen can be so "perpetual, severely

6  restrictive, and highly demanding," Fraser, 342 F.3d at 1041,

7  that it amounts to a substantial limitation on a major life

8  activity.  Plaintiffs' allegation that he properly manages his

9  diabetes is not mutually exclusive from a finding that he is

10  also substantially limited from a major life activity.

11  Accordingly, the court finds that plaintiff has sufficiently

12  pled disability under the ADA.[6]

13  **C. Title VII Claims**

14     Under Title VII, it is an unlawful employment practice for

15  an employer to "discharge any individual, or otherwise

16  discriminate against any individual . . . because of such

17  individual's race, color, religion, sex or national origin."  42

18  U.S.C. § 2000e-2.  Plaintiff's retaliation claim and claim for

19  harassment are both related to his disability or requested

20  accommodation for his disability.  Disability is not a protected

21  class under Title VII.  See William v. Holiday Inn, No. C-95-

22  0832, 1996 WL 162992 (N.D. Cal. Mar. 13, 1996) (dismissing all

23  of the employee's disability discrimination claims under Title

24  VII).  Accordingly, plaintiff's Title VII claim is dismissed.

25  _____

26     [6] If plaintiff amends to allege federal funding, the pleading
also suffices to allege disability under the Rehabilitation Act.

1  **D. Compliance with the California Tort Claims Act**

2      Under the California Tort Claims Act, Cal. Gov't Code § 900

3  et seq., the "failure to timely present a claim for money or

4  damages to a public entity bars a plaintiff from filing a

5  lawsuit against that entity." State v. Superior Court, 32 Cal.

6  4th 1234, 1239 (2004). "The failure to allege facts

7  demonstrating or excusing compliance with the claim presentation

8  requirement subjects a claim against a public entity to

9  [dismissal] for failure to state a cause of action." Id. The

10 purpose of the California Tort Claims Act is to provide the

11 public entity with sufficient information to enable it to

12 investigate claims and to settle them, if appropriate, without

13 litigation. Phillips, 49 Cal. 3d at 705.

14      Plaintiff concedes that he "has failed to allege facts

15 sufficient to show compliance with the Government Claims Act"

16 but argues that he can comply with the act if granted leave to

17 amend.[7] Opp'n at 4. The argument is misplaced. California

18 Government Code section 911.2 requires a claim for injury to a

19 person to be presented "not later than six months after the

20 accrual of the cause of action." If a party fails to file a

21 timely claim, he or she may seek permission from the entity to

22 file a late claim, but only if permission is sought "within a

23

24      [7] Even if the court were to construe plaintiff's visit with
the city's human resources manager as constituting the presentation
25 of his claim, the only adverse action complained of at that point
in time was his negative performance evaluation. The conduct
26 giving rise to his state law claims at issue in this motion did not
occur until later.

10

1  reasonable time not to exceed one year after the accrual of the

2  cause of action."  Cal. Gov. Code § 911.4(b).  The events giving

3  rise to the state law claims at issue here occurred in November

4  2006.  Accordingly, plaintiff is unable to comply with the

5  Government Claims Act, and the state law causes of action at

6  issue in this motion are dismissed without leave to amend.[8]

7                        **IV. Conclusion**

8       For the reasons explained above, the motion to dismiss is

9  granted in part and denied in part.  Plaintiff is granted twenty

10  days leave to amend.

11       IT IS SO ORDERED.

12       DATED:  July 3, 2008.

13  _____

14

15  LAWRENCE K. KARLTON
    SENIOR JUDGE
16  UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24  _____

25       [8] The court therefore need not address arguments specific to
    the claims for wrongful termination in violation of public policy,
    intentional misrepresentation, and violation of California Labor
26  Code sections 201 through 203.

                                11